**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**CORNELL PHILLIPS**                                                        **PLAINTIFF**

**vs.**                                                        **No. 3:11-CV-00104-CWR-FKB**

**NISSAN NORTH AMERICA, INC.**                                            **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Nissan North America, Inc.'s ("Nissan") Motion for Summary Judgment and Rebuttal, its memorandum in support of the motion, and Response by Plaintiff Cornell Phillips. The Court, after reviewing the motion, briefs of the parties, and the relevant law, is of the opinion that the motion must be GRANTED.

## I. BACKGROUND

The genesis of this lawsuit occurred in August 2008, when Phillips, a Nissan employee in its Parts Quality Engineering Department at its manufacturing facility in Canton, Mississippi, complained to Nissan's Human Resources Department that he was being sexually harassed by a co-worker, Carrie Jones. The Human Resources Department investigated the allegations and conducted interviews and follow-up interviews of several employees within the department including Phillips and Jones. Aff. of Jeffrey Webster, Director of Human Resources for the Canton Facility [Docket No. 21-2], at ¶¶ 6 - 7. That investigation revealed that Phillips and Jones had engaged in a swearing match and that Jones had directed profanity towards co-workers in the workplace. *Id.* at ¶¶ 8-9. Although the alleged instances of sexual harassment could not be substantiated, Nissan uncovered facts about an earlier complaint that Jones had lodged against Phillips. *Id.* at ¶ 8.[1] Armed with the information it uncovered, Nissan determined that it would

---

[1]This complaint, however, was never investigated because the production manager to whom Jones had complained did not forward the complaint to HR. *Id.*, at ¶ 15.

be best to separate Phillips from Jones. To accomplish this goal, Phillips' rotation in the department was changed. According to Nissan, this was done "out of an abundance of caution to ensure that, even though Mr. Phillips' complaint against Ms. Jones could not be substantiated by the investigation, both Mr. Phillips and Ms. Jones would be relieved of a working environment which they both claimed was objectionable." *Id*. In addition, Nissan wanted to protect each complainant from additional issues of this kind in the future *Id*. When Phillips was moved to a different production department, he suffered "no change whatsoever to his pay, benefits, shift, or opportunities for advancement with Nissan in any way." *Id*. at ¶ 16.

Unsatisfied, Phillips filed a charge of discrimination with the EEOC alleging sexual harassment. He also complained that Nissan did not follow its "normal procedures" when investigating his complaint and further alleged that his transfer evinced retaliation. Charge of Discrimination [Docket No. 1-1], at 5. The EEOC issued its Determination letter on September 14, 2010 "recommend[ing] a no cause finding on the sexual harassment allegation," but recommending a cause finding on Phillip's shift rotation change. [Docket No. 1-1], at 6-7. The EEOC concluded that although Nissan advised that the rotation change was implemented so that Phillips and Jones would not interact with one another, the corrective measure "should not adversely affect the complaint [sic] more specifically, if the harasser and the target must be separated, the harasser should be moved." *Id*. at 7.[2]

_____

[2]As noted in *Richardson v. Mississppi Department of Human Services*, 2012 WL 568285, *5, n.5 (S.D. Miss. Feb. 21, 2012)(Jordan, J.), such determination letters can have probative value, but the EEOC's findings are not dispositive on the claims submitted to the jury. *See also Hamlin v. Mississippi Department of Health*, Civil Action No. 3:09cv749CWR-FKB, slip op. at 2 (S.D. Miss. May 9, 2011)(citing *Crawford v. Hospitality Enterprises, Inc.*, 2002 WL 1905883, at *6 (E.D. La. 2002))(EEOC determinations are highly probative of discrimination).

The EEOC issued its Notice of Right to Sue on October 12, 2010 and Phillips timely initiated this suit in Madison County Circuit Court claiming that he had been sexually harassed by Jones. Although Nissan had investigated his allegations and even disciplined Jones, Phillips contends that "[d]efendants deviated from standard policies and procedures for investigating complaints of sexual harassment and took Plaintiff's complaints of sexual harassment less seriously because he was a male." Complaint [Docket No. 1-1] at 3, ¶¶ 13-14. In retaliation for making a report of sexual harassment, says Plaintiff, he was moved to a different, less desirable rotation. *Id*. at 3, ¶ 18.[3] To support his claims of retaliation, Phillips notes that his co-workers stigmatized, isolated, and questioned him regarding his sudden rotation change. And because these acts constitute violations of Title VII of the Civil Rights Act of 1964, he demands that a jury be permitted to award him compensatory and punitive damages for his emotional distress and mental anguish he suffered. *Id*. at 3.

Invoking the jurisdiction of this Court, Nissan timely removed this action to this Court. See 42 U.S.C. § 1331. Having concluded discovery, Nissan has filed its motion for summary judgment to which Plaintiff has responded. [Docket No. 1].

## II. STANDARD

Though motions for summary judgment are filed frequently, not every case is suitable for such disposition. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[3]Phillips accused Jones of making sexually harassing comments, and according to counsel for plaintiff, "[t]he exact nature of Ms. Jones' comments are so crass, rude and sexually inappropriate that neither party's counsel can bear to set them out in type." *Plaintiff's Memorandum in Support of His Response in Opposition to Defendant's Motion for Summary Judgment* [Docket No. 25], at 2, n.1. Because counsel for Plaintiff concedes that these comments are not actionable under Title VII, and further concedes his sexual harassment claim, see, *id*. at 8, there is no need to discuss the alleged comments.

matter of law." Fed.R.Civ.P. 56(c). The Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro Transit Authority*, 404 F.3d 938, 940 (5th Cir. 2005). If the moving party "shows that the non-moving party presented insufficient evidence in support of its allegations, 'the non-movant must come forward with specific facts showing a genuine factual issue for trial.'" *Jones v. Lowndes County, Mississippi*, ---F.3d---, 2012 WL 1322914, at *1 (5th Cir. April 18, 2012).

Pointing to and setting forth these specific facts is the responsibility of the non-movant, and these facts must consist of more than "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Davis v. Louisville Municipal School District*, 2010 WL 290956, *2 (N.D. Miss. 2010)(quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)).

Additionally, "the court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Zisman,* 2008 WL 879726, at *3, *citing Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994). Where there is no proof of contradictory facts, the court will not assume that nonmoving party could or would prove the necessary facts. *Id.*, *citing Wallace v. Texas Tech. University*, 80 F.3d 1042, 1048 (5th Cir. 1996).

This Court is ever mindful that although a useful device, summary judgment "must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989); *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991). The jury has the responsibility to assess the probative value of the evidence. As a consequence, a court must step back and not make any credibility determinations, and it must not weigh

evidence or draw from the facts legitimate inferences for the movant. *Strong v. The Dept. of Army*, 414 F.Supp.2d 625, 628 (S.D. Miss. 2005).

## III. ANALYSIS

<u>Title VII Retaliation</u>

Having conceded his claim of sexual harassment, the only issue to be decided is whether Nissan retaliated against Phillips when he reported to Nissan, Jones' alleged harassment. In order to establish a prima facie case of Title VII retaliation, Phillips must show that: (1) he engaged in activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action. *Anthony v. Donahoe*, No. 11-30644, 2012 WL 470193, at *4 (5th Cir. Feb. 13, 2012). Once Phillips establishes a *prima facie* showing, the burden shifts to Nissan to provide a legitimate, non-retaliatory reason for the adverse employment action. *Hernandez v. Yellow Transportation, Inc.*, 670 F.3d 644, 657 (5th Cir. 2012). "If the defendant presents evidence that supports that it acted properly, the fact-finder must decide whether retaliation was the but-for cause of the employer's actions." *Id.*, *citing Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996). *See also Richardson v. Mississippi Dept. of Human Services*, 2012 WL 568285, *4 (S.D. Miss. Feb. 21, 2012)(If such a reason is demonstrated, the plaintiff must ultimately show "that the employer's explanation is merely a pretext for discrimination).

Without challenging Phillips' assertion that he was engaged in protected activity, Nissan argues that it is entitled to summary judgment because (1) there is no evidence that Phillips was subjected to an adverse employment action and (2) even if Phillips was subjected to an adverse employment action, Nissan has offered legitimate non-retaliatory reasons for its actions, which remain unrebutted by Phillips.

<u>Adverse Employment Action</u>

With respect to the first argument, Phillips contends he was subjected to an adverse employment action when he was "moved to a new rotation after the conclusion of the investigation into the complaints he and Carrie Jones made against each other." *Plaintiff's Memorandum* [Docket No. 25], at 7. He asserts that his transfer gave the impression to others that he had done something wrong. Dep. of Cornell Phillips [Docket No. 21-1], at 56. More particularly, his new supervisors asked him questions about why he had been moved.

The Court must determine whether the transfer constituted adverse employment action. An adverse employment action in the Title VII retaliation context depends on whether the act "would have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Richardson*, *supra*, at *6 (internal citation omitted). *See also* Hernandez, 670 F.3d at 657. Indeed, the Fifth Circuit has recognized that a lateral reassignment to a position with equal pay *could* amount to a materially adverse action in some circumstances. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009). But, "'this depends on the facts of the particular case, which must be judged from the perspective of the reasonable employee.'" *Id*. (citation omitted). Consequently, a lateral transfer where plaintiff continues to receive the same salary generally is not materially adverse. *Harrison*, 2012 WL 1623575, at *4. Phillips has not challenged the employer's description of his transfer:

> [The] change in the department to which Mr. Phillips provided PQE services resulted in no change whatsoever to his pay, benefits, shift, or opportunities for advancement with Nissan in any way. His pay and benefits remained identical to what they were before the change, and he remained on the second shift with the same work hours and reporting to the same PQE managers and to his same PQE office and desk location as he had had before this changes in the production which he serviced.

Aff. of Jeffrey Webster [Docket No. 21-2], at ¶ 16 (emphasis added). *See also* Phillips' Depo. [Docket No. 21-1], at 49-51 (Phillips testified that after the change he continued to receive the same benefits and he continued to receive "meets expectations" on his evaluations). Facing the Webster affidavit and his own deposition testimony, Phillips' primary argument to the Court that he suffered an adverse employment is summed up in the following statement in his brief: "Any reasonable juror might agree with the Plaintiff, or disagree with him that the appearance that he had done something wrong and was, accordingly, moved from his rotation while Ms. Jones was not displaced would be sufficient to dissuade a reasonable employee from reporting sexual harassment." Plaintiff's Memo. [Docket No. 25], at 5-6. The Court, however, disagrees.

"While the employment action need not be an 'ultimate' employment decision, it must cause harm or injury to the plaintiff." *Willis v. Cleco Corp.*, 2011 WL 4443312, *11 (W.D. La. Sept. 22, 2011). No harm has come to Phillips by the mere fact that others merely believed that he did something wrong or that it gave the mere "appearance" that Phillips had done wrong. "[N]ormally," as the Supreme Court has noted, "petty slights, minor annoyances, and simple lack of good manners" will not deter victims of discrimination from complaining to the EEOC. *Burlington Northern & Sante Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006). To the extent that giving the appearance that a complainant has done wrong can even be characterized as a "petty slight" or "minor annoyance," it certainly does not rise to the level of material adversity. *See*, *e.g.*, *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 485 (5th Cir. 2008)(holding that as a matter of law rude treatment does not rise to the level of material adversity); *Johnson v. Edwards*, 2012 WL 399167, *4-5 (S.D. Miss. Feb. 7, 2012)(co-employee's alleged comments that he did not want plaintiff on staff and that she could be acting as spy for human services determined to fall in petty slight category); *id*. (allowing co-workers to verbally assault plaintiff

and then refusing to document that conduct same found to be petty slight); *Stewart,* 586 F.3d at 332 (5th Cir. 2006)(being chastised by supervisors and ostracized by co-workers not materially adverse); *Richardson*, 2012 WL 568285, at *6 ("allegations of unpleasant work meeting, verbal reprimands, improper work requests and unfair treatment do not constitute adverse employment actions."); *Butler v. Exxon Mobil Corp.*, - - - F. Supp.2d - - -, 2012 WL 175121, *14 (M.D. La. Jan. 20, 2012)("chastisement by superiors and ostracism by co-workers 'do not rise to level of material adversity'")(citation omittied); *Patton v. Brookshire Grocery Co.*, 2011 WL 6160497, at *6 (W.D. La. July 11, 2011)(workplace teasing, ridicule and criticism does not constitute material adversity); and *St. Cyr v. Napolitano*, 2011 WL 4964104, at *19 (W.D. Tex. Oct. 18, 2011)("isolated incidents that may have caused animosity and prejudicial feelings" generally do not rise to level of material adversity).

There has been no showing that Phillips suffered an adverse action. As such, Nissan is entitled to judgment as a matter of law.

<u>Legitimate Nondiscriminatory Reason</u>

There, however, is more which countenances against a finding that Nissan retaliated against Phillips. Even if the Court were to conclude that the transfer constituted an adverse employment action and that a causal link existed between the protected activity and the adverse employment action, Nissan has produced evidence of a legitimate, non-retaliatory reason for placing Phillips on a separate rotation, and Phillips has presented no evidence to rebut these nondiscriminatory reasons.

In his affidavit, Webster explained that although Phillips' complaints of sexual harassment could not be substantiated, Jones was given a Written Reminder for inappropriate conduct; such conduct being directing profanity toward co-workers. [Docket No. 21-2], at ¶ 9.

The company "further determined that because Phillips and Jones were required to have business contact with one another in doing their respective jobs, [Nissan] would separate them in a manner that would eliminate, as best as possible, the necessity of their having business-related interaction at Nissan's workplace." *Id*., at ¶ 10. In essence, the reassignment guaranteed that Jones and Phillips would not have a counterpart relationship and that relationship would not arise in the future. *Id*. at ¶ 14. Thus, there would be no business purpose for them to have contact while on the job. Ultimately, then, this remedy addressed not only Phillips' complaint, but the complaint which Jones had brought against Phillips and not previously investigated.

In response, Phillips says nothing more than that he is entitled to have a jury figure out why Nissan made the decision to move him and leave Jones in her rotation when they both made complaints against each other. A jury, he contends, would have to determine whether a reasonable employee "would find this action as suggestive that Cornell Phillips had done something wrong and have the effect of dissuading him, and other similarly situated men, from complaining of sexual harassment. *Plaintiff's Memorandum* [Docket No. 25], at 8. Such a conclusory statement is insufficient to create a genuine issue of material fact as to why Phillips was transferred. See *Johnson*, 2012 WL 399167, at *6; *Elliott v. Group Med. & Surgical Serv*., 714 F.2d 556, 564 (5th Cir. 1983)(no matter how genuine, subjective belief of discrimination alone cannot be the basis of judicial relief.).

In fact, on the point of transfers for the purpose of separating clashing employees, the case of *Nash v. Electrospace System, Inc.* 9 F.3d 401 (5th Cir. 1993), is highly instructive. In that case, Plaintiff Nash complained to human resources regarding her supervisor John Sharp's sexually inappropriate comments. *Id*. at 403. Because the company could not corroborate her allegations, it decided to transfer only Nash to another department with no loss of pay or

9

benefits. *Id*. at 404. Despite the plaintiff's contention such action constituted retaliation, the Fifth Circuit found that the employer's transfer of the plaintiff to another department following a complaint of harassment did not represent retaliation rather "this decision reflected a prudent response to an unpleasant situation" and "an act that insulated her [Nash] from further contact with Sharp." *Id*.

Similar to plaintiff Nash, Phillips' transfer did not result in a loss of pay or benefits. He merely complains of insults and ridicule by his co-workers- -something about which he contends he warned the company before the transfer was ordered. But as noted above, the undefined insults do not constitute material adversity.

Also, like the Defendant in *Nash*, Nissan made a prudent attempt to separate the complaining parties. In the face of this, Phillips has failed to adequately challenge Nissan's legitimate reason for changing his rotation and it was his burden to do so. Specifically, Phillips does not present evidence that Nissan's reason that it transferred him to another shift in order to deescalate the situation was a pretext for retaliation. Although Phillips maintains that "the appearance that he had done something wrong and was, accordingly, moved from his rotation while Ms. Jones was not displaced would be sufficient to dissuade a reasonable employee from reporting sexual harassment," *see*, [Docket No. 25 at 5-6] that is not enough. To the contrary, *Nash* and other courts have concluded that such lateral transfers are legitimate and an exercise of sound business judgment. *See, e.g., Hockman v. Westward Communications, L.L.C.*, 282 F.Supp.2d 512, 524 (E.D. Tex. 2003), *aff'd* 407 F.3d 317 (5th Cir. 2004)(transferring employee for purpose of separating employee from alleged harasser is legitimate, non-retaliatory reason); and *Loya v. Sebelius*, - - - F.Supp.2d - - -, 2012 WL 52265, at *6 (D.D.C. January 10, 2012)(employer's need to relocate to employee's office in part because she and co-employee

they could not work together was not pretext for retaliation).    As such, Phillips has failed to overcome Nissan's legitimate, non-retaliation reason for his transfer.

Accordingly, the Court finds that Plaintiff has provided insufficient evidence to create a genuine issue of material fact on this claim.   Nissan is entitled to summary judgment.

## IV.  CONCLUSION

As Plaintiff fails to raise a genuine issue of fact as to any claim, Defendant is entitled to judgment as a matter of law on Phillips' claim of retaliation and the claim of sexual harassment, which Plaintiff concedes.4

SO ORDERED, this the 14th day of June, 2012.

s/Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[4]The Court dismisses as moot the defendant's motions in limine. [Docket Nos. 29, 31].